## SHIRK, EXECUTOR, *v.* LINGEMAN.

[No. 3,355. Filed March 5, 1901. Rehearing denied May 10, 1901.]

LAW OF CASE.—*Pleading.—Amendment.—*The ruling on appeal as to the
   sufficiency of the complaint constitutes the law of the case, and an
   amendment which does not substantially change the character of
   the pleading does not take the case out of the rule. *p. 633.*

Shirk, Ex., *v.* Lingeman.

Contracts—*Agreement to Exchange Lands.—Referee.— Breach of Contract.*—Where a contract for the exchange of lands provided that should plaintiff decide to take a certain other tract of land a third party named should decide the number of acres he should receive, and plaintiff parted with his property, and made his selection of the lands he would take in exchange, it became the duty of the defendant through such third person to determine the relative value of the lands and the number of acres he should receive, and the failure and refusal of defendant to act constituted a breach of the contract for which an action will lie. *pp. 633-639.*

Same.—*Agreement to Exchange Lands.—Breach of Contract.—Measure of Damages.*—Where a contract for the exchange of lands by its terms fixed the relative value of the lands to be exchanged and from which one of the parties had the right to select, such values formed a basis of recovery in an action for the breach of the contract. *pp. 637-639.*

Appeal and Error.—*Evidence.—Record.*—The manuscript of the evidence must be incorporated in the bill of exceptions and cannot be brought into the bill by reference. *pp. 639-641.*

Same.—*Evidence.—Record.*—The manuscript of the evidence must be incorporated in a bill of exceptions, certified and signed by the judge and afterward filed with the clerk. *pp. 641, 642.*

From the Kosciusko Circuit Court.  *Affirmed.*

W. B. Mitchell, N. N. Antrim, W. B. McClintic, L. R. Royse, B. Shane and J. B. Jones, for appellant.

R. J. Loveland, H. P. Loveland, W. G. Sayre, J. W. Cook and J. D. Widaman, for appellee.

Robinson, J.—Appellee filed a claim against the estate of appellant's decedent for damages for the breach of a contract for the exchange of lands. Appellant answered in denial. Trial by jury, verdict in appellee's favor, and over a motion for a new trial judgment was rendered on the verdict for $19,304.10. The errors assigned question the sufficiency of the complaint or claim, and the denial of a new trial. Each of the four paragraphs of appellee's claim is based upon the following contracts: "In this contract, E. H. Shirk is to deed John Lingeman, or order, 2,560 acres of land in Craighead county, Arkansas, or 3,840 acres in Poinsett county, he to select, taking the land in a body

as nearly as he can, or, if he prefers, he may have land in the island, Clayton county, and allow me the difference in value between that and the Craighead county.    The land to be selected out of any I may have in either county, when he comes down.    Should he select in the island, T. B. Mills is to decide the difference in value.    I am within ninety days to pay him $5,000.    In consideration of the above, he, within three days, deeds and mails to me the deed for 226 acres he owns joining the town of Brownsburg, Hendricks county, Indiana, deed to be warranty, subject to $5,000 in mortgage on said property.    He is also to assign to me a judgment on foreclosure for about $285, and assign to me a note of $176.50, and both on Charles Botmer and wife. Money to be paid on delivering of possession of property. Should he want the money sooner, or part of it, I will pay it.    E. H. Shirk, John Lingeman."

"Peru, Indiana, December 4, 1874.    The price the said Shirk pays the said Lingeman for his 226 acre farm is $27,000, and the price the said Lingeman takes the Arkansas land at is $17,000.    E. H. Shirk, John Lingeman."

The supplemental contract is in these words:  "In this contract, referring to a contract made December 4, 1874, in which E. H. Shirk was to deed John Lingeman 2,560 acres of land in Craighead county, or 3,840 acres in Poinsett county, or an equivalent in value in Clayton county, township 20, range 4 east, Clayton county, Arkansas, the amount to be decided he would be entitled to in Clayton county by T. B. Mills.    Lingeman now elects to take 1,703 acres in Poinsett county, township 12, range 5 east, and the residue in township 20, range 4 east, Clayton county, Arkansas. The number of acres he is entitled to to be decided by T. B. Mills.    Deed to be made subject to all taxes accruing since December, 1875.    Selection to be made within three months. This instrument has reference to that part of original contract made December, 1874, which refers to the Arkansas lands only, and the note of Botmer and wife, which I release

him as personal indorser; amount of note $176.50. E. H. Shirk, John Lingeman. December 17, 1875."

Upon the former appeal the contract was construed to be a contract for the exchange of lands with certain prices affixed to each, the difference to be paid in money. The two paragraphs of complaint on that appeal were held sufficient. *Lingeman* v. *Shirk,* 15 Ind. App. 432. On reversal these two paragraphs were amended but the same cause of action is stated in the amended paragraphs that was in the original paragraphs. No change was made in the issues for trial. The ruling on the former appeal as to the first and second paragraphs is the law of the case on this appeal. An amendment which does not substantially change the character of the pleading does not take the case out of the rule. *City of Logansport* v. *Humphrey,* 106 Ind. 146; *Nickless* v. *Pearson,* 126 Ind. 477; *Poulson* v. *Simmons,* 126 Ind. 227; *Continental Ins. Co.* v. *Houser,* 111 Ind. 266; *Johnson* v. *Hosford,* 110 Ind. 572; *Elkhart, etc., R. Co.* v. *Waldorf,* 17 Ind. App. 29; *State, ex rel.* v. *Christian,* 18 Ind. App. 11.

In Elliott's App. Proc. §578, the rule is thus stated: "It is a firmly settled principle that the decisions of the appellate tribunal constitute the law of the case upon all the points in judgment, no matter at what stage of the proceedings they arise, or in what mode they are presented. This rule is not one springing from the doctrine of *stare decisis,* but it is one founded upon the same principle on which rests the doctrine of *res adjudicata.* Questions before the court for decision, and by the court decided as essential to a final judgment, are conclusively and finally adjudicated. The law as declared can not be changed upon a second or subsequent appeal." *Hatfield* v. *Cummings,* 152 Ind. 537; *Brunson* v. *Henry,* 152 Ind. 310.

The only error argued on the former appeal was the sufficiency of an answer of the six years' statute of. limitations, and the court stated that this plea was sustainable only upon

the theory either that the complaint was bad or that the contract set up by the complaint was a parol contract.

Each paragraph of the complaint now, as on the former appeal, is based on the written contract. This contract was construed on the former appeal and by that construction we are concluded. The construction thus given must determine the theory upon which recovery is sought. That theory, as we construe each paragraph of the complaint, is for a·recovery of damages for the breach of a contract for the exchange of lands. It is unnecessary to repeat what was said in the former opinion as to the duty of appellee to select the land he wanted and the effect of the failure of Mills to act as required in the contract.

By the contract Mills was to decide the difference in value should island land be selected, and when it was agreed that the residue should be in Clayton county, Mills was to decide the number of acres. The first paragraph avers that Mills never did so decide, nor did Shirk ever convey any of the island land, although frequently requested to have the difference in value decided by Mills, and the second paragraph avers that Mills was Shirk's agent, having general management and control of his Arkansas lands.

The referee, who was to decide the difference in value should appellee select island land, and who was to decide the number of acres appellee should receive, was agreed upon when the contract was made. It is true Mills was to act for both parties, but when appellee had parted with his property and had made selection of the lands he would take in exchange, and had notified Shirk and Mills of such selection, it then became the duty of Shirk through Mills to determine the relative value of the lands in the two counties, and the number of acres, and the failure or refusal of Mills to act was a breach of the contract by Shirk. Appellee had no authority under the contract to select another referee. The referee was named in the contract. When appellee had done what the contract required he should do, he had done all

that was required of him in consummation of the agreement for reference contained in the contract. It then became the duty of Mills to act, and when he failed or refused the agreement of Shirk was violated. We do not understand that a rule different from what we have indicated was declared in the case of *Coles* v. *Peck,* 96 Ind. 333, 49 Am. Rep. 161, cited by counsel. In that case each party was to select an arbitrator under certain contingencies. Coles named two arbitrators, one of whom Peck should have selected, but neglected to do so. The two so chosen fixed a valuation which Coles offered to pay, and demanded a deed. The effect of the holding in that case is, not that Coles might select two arbitrators and thus bind Peck as to the valuation so fixed by them, but that the acts of Coles showed that he had done all he reasonably could do to consummate the agreement for reference, and for that reason had presented a good *prima facie* case for equitable relief. See *Lingeman* v. *Shirk,* 15 Ind. App. 432, and cases there cited.

The third paragraph sets out the same contract, avers ownership of the Hendricks county farm, and its value as $27,000, that decedent, Shirk, sought out appellee with the view of purchasing or otherwise becoming the owner of appellee's farm, and to that end represented that he owned in fee 2,560 acres of land in Craighead county, and 3,840 acres in Poinsett county, Arkansas, either of which was of the value of $17,000, that he also owned in fee lands in Black river island in Clayton county, Arkansas, of like value; that thereupon the contract was made for the sale by appellee of his farm to Shirk for $27,000 and to pay for the same Shirk assumed a $5,000 mortgage on the farm, and was to pay appellee within ninety days $5,000 in cash, and to convey to appellee by warranty deed either 2,560 acres of Craighead county land or 3,840 acres of Poinsett county land, or $17,000 worth of land in Clayton county, the price per acre to be fixed by T. B. Mills, the lands in Arkansas to be selected by appellee; that after the contract was written

and signed it was discovered that the price of appellee's land and the Arkansas land had been inadvertently omitted, whereupon, and before the contract was delivered, the clause was added and made part thereof; that appellee assigned to Shirk the judgment of foreclosure and promissory note mentioned in the contract. It is further averred that appellee "did do and perform all and singular the acts required of him in the full extent of said contract"; that he inspected the Arkansas lands, elected to take the 3,840 acres in Poinsett county and so notified Shirk and proceeded to select the land under the contract, whereupon Shirk represented that he had 1,703 acres in Poinsett county, and no more, whereupon the contract of December 17, 1875, was made; that within three months thereafter he made selection of Clayton county land such part of certain sections named as Mills might decide he was entitled to under the contract, and so notified Shirk and Mills, and requested and demanded that Mills should make such decision; that Shirk and Mills failed and refused to make such decision as to the Clayton county land, to the end that it might be ascertained certain the number of acres he should receive in Clayton county, that Mills could have made such decision, but, without appellee's fault, he refused to do so, and that by reason thereof appellee has never received any other sum or sums or land for his farm except as above stated; that the 2,137 acres of land in Poinsett county was at that time of the value of $4.50 per acre, or $9,616.50, and that appellee was entitled to land in Clayton county of that value; that by reason of the refusal of Shirk and Mills to make such decision, and without any fault of his own, he has never received any portion thereof, and was at that time, to wit, three months after December, 1875, damaged in the sum of $9,-616.50.

The averments of the fourth paragraph are substantially the same as the third, with the additional averments "that in the meantime the said Shirk and said Mills had combined

together for the purpose of cheating the plaintiff in the determination and decision of said question. That said Mills had come under the dominion of said Shirk, and Mills would not act therein except on terms dictated by said Shirk, and that he refused to make such decision as to the lands so selected by the plaintiff and pretended falsely and fraudulently that the plaintiff had authorized him not only to decide the number of acres he should have, but also that he, Mills, should also select the lands plaintiff should have. That such pretense was false and fraudulent, and was set up at the instance of said Shirk, for the above stated purpose of cheating this plaintiff. He further says that under the direction of said Shirk said Mills wholly refused, without any fault of the plaintiff, to fix the number of acres the plaintiff should have of the land so selected by him, although he was often thereunto requested. That said Mills had been long acquainted with said Shirk, was and had been his agent and employe, and debtor, of which facts the plaintiff was entirely ignorant at the time said contract was made, and remained in ignorance of such facts, until he refused to decide the number of acres he was to have, under said contract, of the land so selected by him."

The contract as we have said was a contract for the exchange of lands, the difference to be paid in money. The prices fixed were the relative values, and must be held to have been intended as a basis for such exchange. The actual market value of the lands may have been the amounts stated, or it may have been more or less. The value of the 2,560 acres and of the 3,840 acres was fixed each at $17,000. The complaint seeks only to recover the value of the land which appellee did not receive. He did receive 1,703 acres of the Poinsett county land. For the purposes of the exchange the parties had agreed this land was worth a certain amount per acre. This must be true, for in no other way could it be determined the amount of land appellee was still entitled to receive. When he had received a certain number of acres

of Poinsett county land he had received the equivalent of a certain number of acres of Craighead county land. The relative value per acre of the lands in these two counties may be readily ascertained. The relative value in these two counties and in Clayton county was to be fixed by Mills. The only basis from which he could work in fixing the number of acres in Clayton county was the value per acre in the other counties. And to this basis he must necessarily have resorted had appellee selected a part only of either the Craighead county or the Poinsett county lands. But the supplemental contract, which refers to the fact that Shirk was to deed appellee either the 2,560 acres or the 3,840 acres, or an equivalent in value in Clayton county, recites that appellee elects to take 1,703 acres in Poinsett county, "and the residue" in Clayton county, the number of acres to be decided by Mills. It is averred that appellee elected to take the 3,840 acres. A deed of that to him by Shirk would have satisfied the contract. But Shirk had only 1,703 acres in that county. This appellee agreed to take, and when the parties agreed that he should have "the residue" in Clayton county they must have had reference to the land appellee had selected and had not received. When the supplemental contract was entered into, appellee had deeded his land to Shirk and had assigned to him the judgment of foreclosure and the note; Shirk had paid $5,000 cash, assumed the mortgage for $5,000, transferred the 1,703 acres, and still owed appellee "the residue", the equivalent of which appellee was to have in Clayton county land. This residue of the land he had elected to take is the 2,137 acres. Appellee was to receive the same dollar value as this 2,137 acres. He wanted that value in Clayton county, and Shirk agreed to give it, and agreed that Mills should decide the acreage. This was a condition precedent to the payment to appellee in Clayton county land of the balance owing for what Shirk had already received. When Mills refused to make this decision Shirk's agreement was violated.

Each paragraph of the complaint states a cause of action even when tested by the rules of pleading in ordinary civil actions. But it has been held time and time again that in the prosecution of claims against decedent's estates it is not necessary that there should be a formal complaint. Thus in *Lockwood* v. *Robbins,* 125 Ind. 398, it is held to be sufficient "if the statement shows the nature and amount of the claim with sufficient precision to bar another action and a *prima facie* right to recover." In *Wolfe* v. *Wilsey,* 2 Ind. App. 549, the court said: "The statute regulating the prosecution of claims against decedent's estates has always received a liberal interpretation at the hands of our Supreme Court. Thus it has been held again and again that the statement contemplated by the statute is sufficient if it apprises the defendant (administrator) of the nature of the claim, the amount demanded, and contains sufficient substance to bar another action for the same demand." See, *Miller* v. *Eldridge,* 126 Ind. 461; *Stricker* v. *Barnes,* 122 Ind. 348; *King* v. *Snedeker,* 137 Ind. 503; *Huston* v. *First Nat. Bank,* 85 Ind. 21; *Gibbs* v. *Ely,* 13 Ind. App. 130; *Taggart* v. *Tevanny,* 1 Ind. App. 339.

Each paragraph of the complaint in the case at bar shows the nature of the claim, and the demand, contains a copy of the contract upon which the claim is based, and contains enough to bar another action for the same demand. Under the above rules this is sufficient. There was no error in overruling the demurrers.

Certain other questions are discussed which arise under the motion for a new trial. Appellee's counsel earnestly insist that the evidence is not in the record. If this is true the remaining questions discussed are not presented. The motion for a new trial was overruled October 25, 1899, and appellant was allowed ninety days from that date in which to prepare and file bills of exceptions. Judgment was rendered December 20, 1899. Under date of December 27, 1899, occurs the following: "And the said reporter now

files in the office of the clerk of the Kosciusko Circuit Court the longhand manuscript of the evidence in said cause in these words, to wit:" This entry is followed by the longhand manuscript of the evidence referred to, comprising pages 108 to 605, inclusive, and to it is appended the reporter's certificate. Following this is this indorsement: "Filed in the office of the clerk of the Kosciusko Circuit Court by Harriet D. Frazer, official reporter of the Kosciusko Circuit Court, this 27th day of December, 1899. Scott D. Junkin, clerk, Kosciusko Circuit Court." Immediately after this is the clerk's file mark of the same date, and the following: "I, Hiram S. Biggs, judge of the Kosciusko Circuit Court of the State of Indiana, do hereby certify that the within and foregoing longhand manuscript of the evidence in the case of John Lingeman v. Milton Shirk, executor of the estate of Elbert Shirk, deceased, filed by Harriet D. Frazer, the official shorthand reporter of said court, is correct and contains all the evidence given in said cause. January 1, 1900, Hiram S. Biggs, Judge Kosciusko Circuit Court."

The record next recites, under date of January 8, 1900: "Come again the parties by their respective attorneys and the said defendant now files his bills of exceptions herein signed by Hiram S. Biggs, judge of said court, in these words, to wit". This is followed by instructions requested by appellant and instructions given by the court, and comprise of the transcript pages 607 to 652, inclusive. On the following page is this entry: "And the said defendant also files his further bill of exceptions, signed by Hiram S. Biggs, judge of said court, containing the longhand manuscript of the evidence in said cause, which is as follows, to wit". This is followed by the usual recital that the cause came on for trial, that the evidence was heard, taken down in shorthand, transcribed by the reporter, and the longhand manuscript filed in the clerk's office, December 27, 1899, as a part of the record, "which said original longhand manu-

script of said evidence, rulings, objections, and exceptions is incorporated into this bill of exceptions and made a part thereof, and the same is in the words and figures following, to wit:　Which said longhand manuscript of the evidence, filed by said shorthand reporter is heretofore incorporated into the record." This is followed by the usual certificates of the clerk and judge attached to bills of exceptions containing the evidence, and by the clerk's final certificate to the transcript.

From the above it appears that there was at first no attempt to bring the evidence up by a bill of exceptions, but that it was sought to bring it into the record under the provisions of the act of March 3, 1899, although the record fails to disclose that any time was fixed by the trial court within which the reporter should file the transcript of the evidence with the clerk.　But the supreme court has recently held (*Adams* v. *Slate,* 156 Ind. 596), that the sixth section of the act of March 3, 1899 (Acts 1899, p. 384) is invalid for the reason that that section required the judge to accept as true and correct that which the reporter has prepared and filed with the clerk, and that the judge should attach his certificate thereto to that effect.　The sixth section is the only part of the act of 1899 that makes any provision for bringing the evidence into the record.

Nor does the bill of exceptions of January 8, 1900, bring the evidence into the record.　The longhand manuscript of the evidence must be incorporated in the bill of exceptions and can not be brought into the bill by reference.　*Patterson* v. *Churchman,* 122 Ind. 379; *Ohio, etc., R. Co.* v. *Voight,* 122 Ind. 288; *Board, etc.,* v. *Mutchler,* 137 Ind. 140; *Morningstar* v. *Musser,* 129 Ind. 470.

It does appear that the evidence was filed by the reporter in the clerk's office, and that the judge certified that that evidence which was so filed is correct.　We might be authorized to hold this a sufficient bill of exceptions without a

formal caption if it appeared that this evidence when so certified to by the judge had been filed. But the reporter filed the evidence December 27, 1899, and the judge certified the evidence January 1, 1900, and it does not appear that the evidence so certified was ever filed. If this certification could make the evidence as set out a bill it must still appear that such bill was filed. This the record does not show. The evidence is not in the record.

Judgment affirmed.