SMITH ET AL. *v.* THE AMERICAN CRYSTAL MONUMENT COMPANY ET AL.

[No. 3,982. Filed February 21, 1902. Rehearing denied June 17, 1902.]

APPEAL AND ERROR.—*Several Demurrer.*—*Joint Assignment of Error.*— No question is presented for review by a joint assignment of error based upon the action of the court in overruling plaintiff's separate and several demurrer. *pp. 309, 310.*

SAME.—*Record.*—*Evidence.*—The evidence is not brought into the record by the official shorthand reporter's transcript thereof filed in the clerk's office under the act of 1899 (Acts 1899, p. 384); since such provision of the act is invalid. *pp. 310, 311.*

QUIETING TITLE.—*Pleading.*—In an action to quiet title to real estate and to recover possession thereof, all defenses may be shown under an answer of general denial. *p. 317.*

DEEDS.—*Condition Subsequent.*—*Breach.*—Where real estate was conveyed conditioned that the grantee should equip and operate a certain described factory thereon, by a specified time, and in default thereof reconvey the real estate, the failure of grantee to complete the factory within the exact time specified did not amount to a breach of the condition, it being shown that the grantors contributed to the delay. *pp. 318, 319.*

From Hamilton Circuit Court; *J. F. Neal*, Judge.

Action by Henry R. Smith and others against the American Crystal Monument Company and others to recover possession of real estate and to quiet title thereto. From a judgment for defendants, plaintiffs appeal. *Affirmed.*

*S. M. Unger*, for appellants.

*I. W. Christian*, *W. S. Christian* and *E. E. Cloe*, for appellees.

BLACK, J.—The appellants brought suit against the American Crystal Monument Company, appellee, alleging that the other appellees, Ananias Guy and Jesse H. Mavity, refused to join as plaintiffs, and, therefore, were made defendants to answer as to their interests. Guy and Mavity filed their answer of disclaimer, and the other defendant answered in three paragraphs; the first a general denial, the second and third being pleaded as special affirmative defenses. A demurrer of the appellants to the second and third paragraphs of this answer of the corporation was overruled. A reply in denial having been filed, the cause was tried by the court. A special finding was rendered, the appellants excepting to the conclusions of law. A motion of the appellants for a new trial was overruled, and judgment was entered against the appellants.

The appellants jointly assign that the court erred, (1) in overruling their demurrer to the second and third paragraphs of answer above mentioned; (2) in each of its conclusions of law; (3) in overruling their motion for a new trial. As suggested by counsel for the American Crystal Monument Company, appellee, we are unable to examine as to the alleged errors assigned in the first and third specifications of the assignment of errors. The form of the demurrer in question, omitting its caption and the signature of the attorney, was as follows: "The plaintiffs, Henry R. Smith, Joseph D. Trietsch, Wilbur D. Allis, and David B. Dickover, separately and severally, each for himself alone,

demurs separately and severally to each of the second and third paragraphs of the answer of said defendant the American Crystal Monument Company, on the ground that neither of said paragraphs of said defendant's said answer states facts sufficient to constitute a cause of defense to the plaintiffs' complaint." To the overruling of this demurrer the appellants jointly excepted, and the assignment of error, as above stated, is joint. There could not be any error as against the appellants jointly in overruling their several demurrers. They could not effectually except jointly to the ruling, or jointly assign it as an error. It was the same in effect as if each one of appellants had filed a separate demurrer for himself alone, in which case it seems plain one of the appellants could not be so affected by the ruling upon the demurrer of another appellant as to render the exception of the former thereto available. If any error was committed, it was not an error affecting the appellants jointly, and they therefore could not jointly assign it upon appeal. *Louisville, etc., R. Co.* v. *Smoot,* 135 Ind. 220.

The question which the appellants sought to present by their motion for a new trial can not be examined, unless the shorthand reporter's copy of the evidence can be said to have been made part of the record by bill of exceptions. When the motion for a new trial was overruled on the 7th of September, 1899, the court allowed the appellants time for filing bills of exceptions. On the same day the official reporter filed his longhand transcript of the evidence in the clerk's office, and a certificate attached thereto was signed by the judge, dated October 9, 1899. The filing of the transcript by the reporter was shown by the clerk's final certificate, in which also it was stated that the certificate attached thereto was the certificate of the judge. It does not appear that any bill of exceptions was presented to the judge, or that any writing was by him signed as a bill of exceptions, or that any bill of exceptions was filed, or that there was anything filed except the reporter's transcript, to

which, after it was filed by the reporter, the judge affixed a certificate. There does not appear to have been any order of the court for the filing of the transcript, but otherwise it appears to have been intended to pursue the method provided by §6 of the act of 1899, relating to shorthand court reporters (Acts 1899, p. 384, §1470 *et seq.* Burns 1901), which section has many times been treated as ineffectual by the Supreme Court and by this Court. *Adams* v. *State,* 156 Ind. 596; *Anderson* v. *Lake Shore, etc., R. Co.,* 26 Ind. App. 196; *Shirk* v. *Lingeman,* 26 Ind. App. 630.

Therefore, the only specification of error requiring examination is the second. It appears from the special findings that in 1897, about 200 citizens of the town of Arcadia, Hamilton county, entered into a written agreement, and severally subscribed money, or its equivalent in labor and materials, to provide means to secure the location of a factory or factories in that town, which would add to the population, increase the business, and promote the general welfare of the town. The subscriptions were made contingent upon the location of an industry of the kind above described, which should be satisfactory to the committee of citizens having the matter in charge, the total amount of the subscriptions being about $3,500. The subscribers selected six of their number to constitute a committee, known and designated as the "Arcadia Citizens Improvement Committee," who were given charge of the matter of carrying out the objects of the subscribers. The committee consisted of Ananias Guy, H. R. Smith, D. B. Dickover, J. D. Trietsch, W. D. Allis, and J. H. Mavity. The committee organized and selected Ananias Guy, president, H. R. Smith, secretary, and D. B. Dickover, treasurer, and thereupon the committee took charge of the business, and conducted it for and on behalf of the subscribers; Trietsch, Allis, and Dickover being chosen by the committee as a building committee. The committee purchased of one L. A. Hollett, with money derived from the subscriptions, certain real estate, and on

the 13th of November, 1897, took a conveyance thereof by warranty deed, set out in the finding, from said Hollett and husband to the committee, in trust for the objects and purposes for which it was created.

The town of Arcadia was in natural gas territory, and the committee caused to be drilled a natural gas well to produce gas for factory purposes, and entered into negotiations with a certain company to have it construct a glass factory in Arcadia. Pending the negotiations the committee began and largely completed buildings for the use of the company, the cost of the gas-well and building being about $4,000, which was paid out of the subscriptions received by the committee from the subscribers. The negotiations with that company failed, and the committee stopped work on the building. Afterward, in April, 1898, the committee began negotiations with the American Crystal Monument Company, appellee, which we will designate as the company, and conveyed to it by deed, bearing date of June 7, 1898, the real estate previously conveyed to the committee by the Holletts. In this deed were the following provisions: "It is understood and agreed that said grantee, its successors, or assigns, shall within ninety days from this date build, construct, and fully equip, in the buildings on said premises, one first-class furnace, of twelve-pot capacity, for the manufacture of glassware, said furnace to be suitable and sufficient to manufacture lamp-chimneys and similar classes of glassware, and fully to furnish and equip on said premises, within said time, a glass factory of twelve-pot capacity. Grantee, its successors, or assigns, further agrees to operate said factory or plant, for not less than three consecutive years, from the ninety days after the plant is completed, as above provided, employing on an average of not less than sixty bona fide and competent workmen, for not less than nine months in each year of said three years, except unavoidable causes. In the event of failure of grantee, its successors, or assigns to comply wholly or in part with the above

agreement, then said grantee, its successors, or assigns agrees to execute to said grantors, its successors, or assigns, at the expiration of ten days' notice in writing by a majority of the grantors, their successors, or assigns, a full and sufficient deed reconveying all interest in said premises hereby conveyed to it, and fully vacate and deliver full possession of said premises to said grantors, their successors, or assigns, within thirty days thereafter. In that event grantee shall have the privilege of removing all removable machinery of its own therefrom which can be removed without permanent damage to said building or real estate. It is agreed that said furnace, pot arch, and pots in use at time when notice is given to reconvey shall be considered immovable, and shall be a part of said premises, and not be removed. This indenture also conveys a gas-well on said premises which is to be reconveyed upon default as above," etc.

The company went into immediate possession of the real estate and the property so conveyed to it under and pursuant to this deed. The committee undertook the completion of the buildings and the repair of certain parts thereof, and to prepare the same for occupancy by the company's factory, using in such work the funds and means provided in and by said subscriptions, which work by the committee was begun immediately or shortly after the date of the conveyance, and about the same time the company began the erection of its glass factory plant in said buildings and upon the premises so conveyed to it. The parties worked concurrently and as diligently as was practicable under the circumstances, but the committee was unable to complete the buildings within the ninety days stipulated in the deed within which time the company was to have its factory constructed, equipped, and furnished, as stipulated in the deed. Ananias Guy, president of the committee, was in charge of the prosecution of the work on the buildings for and representing the committee, and, discovering that the work could not be finished in said ninety days, he so informed the company and stated

to and promised it that the time of the company, within which its factory was to be completed, should be extended such period as would be equal to the delay caused the company by the failure of the committee to complete the buildings. It was not practicable to construct, fully equip, and furnish the glass factory until the buildings were finished; and the non-completion of the buildings delayed the construction and the operation of the glass factory by the company, "but the evidence does not show for what definite length of time such delay was so occasioned, but was not less than ten days." The committee did not complete this work on the buildings until about and shortly after the middle of September, 1898, and after the expiration of the first ninety days mentioned in the deed.

The company did build and construct in the buildings, prior to September 5, 1898, one first-class furnace of twelve-pot capacity, suitable for the manufacture of glassware, including lamp-chimneys and similar classes of glassware, and on and prior to that date had largely, but not fully, equipped and furnished on the premises described in the deed, a glass factory plant of twelve-pot capacity. The company, from the time it began the building of the glass factory plant, continued to add to and improve the same up to the date of the notice hereinafter mentioned, and "has employed and done much labor in the construction of said factory, and expended large sums of money, to wit, about $10,000 invested in said plant, and in its said business about $20,000." The company began the manufacture of lamp-chimneys in the factory on the 12th of October, 1898, "and has since carried on and largely increased the business and output of said factory, has continuously added to its facilities, and has increased the number of its employes." From the 5th to the 10th of December, 1898, there were forty to fifty employes; prior to that time the number varied, sometimes running from about ten to twenty. "Since said 10th day of December, to wit, about January, 1899, said fac-

tory employed about eighty-five hands, and had been added to, improved, and constructed until it was substantially a glass factory plant of twelve-pot capacity, suitable for the manufacture of lamp-chimneys and other similar classes of glassware."

The company was delayed in the completion of the factory and the full equipment and operation thereof by numerous causes, which were practically unavoidable, among which were the delay of the committee in the construction of the factory buildings; failure of the necessary materials, machinery, and tools ordered from a distance, and which had to be shipped over railroads, to arrive promptly; breakages and other mishaps ordinarily incident to the starting of a new factory. The company acted in good faith in the construction, equipment, and operation of the factory.

On the 10th of December, 1898, the committee, except Ananias Guy, executed and delivered to the company a notice in writing, addressed to it as follows: "We, the undersigned, acting in our capacity of the Arcadia Citizens Improvement Committee, grantors in a certain deed recorded in deed record 71, at page 486, of the records of Hamilton county, Indiana, in which deed you are grantee under certain conditions therein named, do hereby notify you in pursuance of the terms of said deed, to execute and deliver to us, as grantors in said deed, a full and sufficient deed for the following real estate, in said county, and particularly described in said deed, as," etc. (describing the real estate); "which said deed shall be executed and delivered to us at the expiration of ten days from the time of receiving this notice. We do further, under the terms of said deed, hereby notify you that within thirty days from the time of receiving this notice, to fully vacate and deliver up to us full possession of all said premises, together with all buildings, furnaces, pot arch, and pots in use, and all fixtures that are thereon situate. You are further notified that the reason for the giving to you of this notice for the execution and delivery

to us of said deed, and for the vacating and delivering up to us the full possession of all said real estate, buildings, furnaces, pot arch, pots in use, and fixtures is that you have wholly failed and neglected to comply with the conditions of said deed, and in consideration of which said deed was made to you, in that, (1) You have not, within ninety days from said June 7, 1898, built, constructed, and fully equipped in the building on said premises at the time you received said deed, one first-class furnace of twelve-pot capacity, for the manufacture of glassware, and suitable and sufficient to manufacture lamp-chimneys and similar classes of glassware. (2) You have not, within ninety days from said June 7, 1898, fully furnished and equipped on said premises a glass factory plant of twelve-pot capacity. You are further notified that if, at the expiration of ten days' notice, you shall have refused, failed, or neglected to execute and deliver to us such deed above called for, or if at the end of thirty days from the expiration of receiving this notice you shall have failed, refused, or neglected to have fully vacated and delivered possession of the aforesaid property, we shall exercise our legal rights as we may be advised by our legal counsel."

It was further found that this action was begun on the 9th of January, 1899, "at which time the defendant company was entitled to the possession of the premises described in the deed from said committee to said defendant, and was then in the rightful possession thereof; that the thirty days given said defendant in the deed executed by said committee to vacate and deliver possession of said premises had not yet expired; that ever since that time said defendant company has continued in the possession of said premises, and has been continually engaged in the operation of said factory. The defendants Guy and Mavity have no interest in this cause, except as members of said committee, they having refused to join as plaintiffs herein, and the other members of the committee are the plaintiffs in this suit."

Upon the facts found the court stated its conclusions of law unfavorable to the appellants. Some irrelevant statements and some repetitions have been omitted by us in our recital of the special finding.

The appellants, by their complaint, sought to set aside the deed of conveyance to the company, to compel a reconveyance by it, to quiet the title of the appellants, and to recover possession of the real estate, because of the failure of the company to perform the stipulations in the deed of conveyance relating to the construction of the furnace and the glass factory plant within ninety days from June 7, 1898, and to the employment of not less than sixty workmen from and after 180 days from that date. In such an action to quiet title to real estate and to recover possession thereof, all defenses may be shown under an answer of general denial. §1062 *et seq.* Burns 1901, §1050 *et seq.* Horner 1901. Therefore any matter of defense shown by the facts specially found must be regarded as within the issues tried.

So far as the claim of the appellants based upon the agreement of the company to employ not less than a specified number of workmen is concerned, it will be observed that such agreement was included in a stipulation that the company, its successors or assigns should operate the factory "for not less than three consecutive years from ninety days after said plant is completed as above provided, employing *an average* of not less than sixty *bona fide* and competent workmen for not less than nine months in each year of said three years, except unavoidable causes." The court found that the number of workmen employed for a period beginning less than one month after the expiration of ninety days from the time stipulated for the completion of the factory, and before the commencement of the action, which was January 9, 1899, was greater than the average number required by the deed; and a period of nine months, during which, by the terms of the deed, the company was to employ *"an average* of not less than sixty"* workmen, had not elapsed before

the commencement of the action. There could be no cause of action, therefore, because of failure to perform this stipulation.

The appellants are seeking, in effect, a forfeiture of the real estate for breach of conditions subsequent, as set forth in the written notice and demand for a reconveyance and for surrender of possession. In the notice they did not assert any demand because of failure of the company to operate the factory for not less than a specified period of time, employing on an average not less than a certain number of workmen; but they based their notice and demands upon alleged failures of the company in two respects: (1) Its failure to build, construct, and fully equip a first-class furnace of twelve-pot capacity within ninety days from the date of the conveyance of June 7, 1898; (2) upon its failure fully to furnish and equip a glass factory plant of that capacity within the same period. The deed of conveyance provided that if the company should fail in these matters, or either of them, as stated in the notice, it would, at the expiration of ten days' notice in writing, execute its deed reconveying the property, and within thirty days' further time would vacate the premises. It was upon failure strictly to perform these stipulations and non-compliance with the written notice and demand that the suit proceeded. According to the terms of the deed, the company was to have the furnace constructed and equipped and the glass factory furnished and equipped, by the 5th of September, 1898; and the court found that the company did construct a first-class furnace of the requisite capacity prior to that date. The first of the two alleged grounds of the demand of the appellants was therefore without foundation in fact.

It was further found that on and prior to that date the appellee had largely, but not fully, equipped and furnished a glass factory plant; that it acted in good faith in the construction, equipment, and operation of the factory, and began manufacturing on the 12th of October, 1898, and

thereafter carried on and largely increased the business and output thereof. Assuming that a contract for the extension of the time allowed to the company was not sufficiently shown, it appears that the grantors were engaged in the preparation of the buildings, and thereby themselves furnished occasion for delay on the part of the grantee. Whether or not there was any obligation on the part of the appellants to complete the buildings, it appears that, having ceased their proposed preparations because of the failure of a prior negotiation, they resumed them after effecting the agreement with the company, and undertook the completion of the buildings, and in so doing caused delay on the part of the company beyond the stipulated period, the parties working concurrently and as diligently as practicable. It was also found that the committee was unable to complete the buildings within the ninety days stipulated in the deed, within which the appellee was to have the factory constructed, equipped, and furnished; that it was not practicable to construct, fully equip, and furnish the factory until the buildings were finished; that the non-completion of the buildings delayed the construction and operation of the factory not less than ten days, and the committee did not complete the buildings until after the middle of September, 1898, and after the expiration of the period of ninety days.

The suit is based upon this unavoidable delay caused by the action of appellants; whether voluntary or by way of carrying out their obligations to the company does not seem to be material. Whether or not the appellants should be adversely affected by the fact that they demanded the vacation of the premises and the delivery of the possession thereof within a shorter period than that designated in the deed, and without regard to the failure of the court to find the ultimate fact of ownership of the appellants as alleged in the complaint, it appears that the delays, because of which they demanded a reconveyance and the giving of

possession, were caused by the appellants, and therefore did not constitute actionable breaches on the part of the company.

Judgment affirmed.